# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

ARTHUR L. GREEN,

       Plaintiff,

  v.                                                Case No. 07-CV-461

IN-SINK-ERATOR,

       Defendant.

_____

## ORDER

On May 21, 2007, plaintiff Arthur Green ("Green") filed a Pro Se Complaint (Docket #1) against defendant In-Sink-Erator, his employer. The complaint charges In-Sink-Erator with discriminating against Green on the basis of disability, in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq*. It also alleges that In-Sink-Erator violated Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2 *et seq*. Specifically, Green alleges In-Sink-Erator discriminated against him on the basis of race and color, in violation of 42 U.S.C. § 2000e-2(a), and that it violated 42 U.S.C. § 2000e-3(a) by discriminating against him out of retaliation for his opposition to racial discrimination.

In-Sink-Erator, in its brief in support of its motion for summary judgment, set out a concise, yet thorough, factual background and procedural history of this case. Green did not oppose or contradict either of these in his response brief or in his response to In-Sink-Erator's proposed findings of fact. Civil L.R. 56.1 – of which Green was made aware through In-Sink-Erator's inclusion of it, as well as other applicable procedural rules, in its Motion for Summary Judgment – states: "any

factual assertion in the movant's affidavit(s) or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit(s) or other admissible documentary evidence contradicting the factual assertion." Because Green did not object to In-Sink-Erator's factual background and procedural history, and because they are supported by admissible documentary evidence, the court accepts them as true. They are as follows:

I. BRIEF FACTUAL BACKGROUND

Mr. Green began working for In-Sink-Erator, a division of Emerson, in 1989. (DPFOF1 ¶ 6; Green Dep., pp. 14, 15). In-Sink-Erator manufactures garbage disposal units. (DPFOF ¶ 2; Complaint ¶ 4, Answer ¶ 4, Green Dep., p. 20). He initially worked in the production area and then moved in a maintenance-type position titled Automated Systems Technician in 1992. (DPFOF ¶¶ 6, 10; Green Dep., pp. 14, 15, Green Dep., p. 18). As an Automated Systems Technician, Mr. Green was responsible for keeping the machinery and equipment in the area he was assigned operational. (DPFOF ¶ 10; Green Dep., p. 18). He was required to repair the machinery and equipment if the problems were due to hydraulics, electrical, mechanical, electronic, or plumbing failures. (DPFOF ¶ 11; Green Dep., pp. 20-25).

In-Sink-Erator classifies its Automated Systems Technicians according to skill and ability. (DPFOF ¶ 13; Green Dep., pp. 44, 46 and 49). A beginner Automated Systems Technician is considered a "C" level. (Id.) Upon a satisfactory increase in skill level and ability, a "C" level technician would be reclassified as a "B" level technician. (Id.) In similar fashion, a "B" level technician would be reclassified as an "A" level technician upon an increase in skill and ability. (Id.) The "A" level was the highest level for an Automated Systems Technician, not including leadperson or supervisory positions.

It is also true that an individual employed as a "C" level technician would not eventually be reclassified as a "B" level technician in each case. (Id.) Moreover, a "B" level technician would not always be

reclassified as an "A" level technician in every case. (Id.) Rather, each reclassification decision was based on a case-by-case assessment if the individual was ready to move up to more responsibility. (Id.) In addition, there was no timetable as to when, or if, an individual would be moved up a level as an Automated Service Technician. (Id.)

As mentioned above, Mr. Green became a "C" level Automated Systems Technician in 1992. (DPFOF ¶ 7; Foy Affd., ¶ 4). He then was moved up to a "B" level Automated Systems Technician in 1993. (DPFOF ¶ 8; Foy Affd., ¶ 5). In 2001, Mr. Green was moved up to an "A" level Automated Systems Technician. (DPFOF ¶ 9; Green Dep., p. 17; Foy Affd., ¶ 6). Once an Automated Systems Technician achieves the top wage rate in his classification, he or she no longer receives a performance review. (DPFOF ¶ 37; Foy Affd., ¶ 7). Since 2003, Mr. Green has been earning the top wage rate for an "A" level Automated Systems Technician. (DPFOF ¶ 38; Foy Affd., ¶ 8).

Mr. Green signed his name to an internal posting for a Supervisor position of the Automated Systems Technicians in September/October 2005. (DPFOF ¶ 24; Green Dep., p. 155; Mueller Affd., ¶ 3). He thereafter did not turn in the appropriate internal application form to be considered for the position. (DPFOF ¶ 26; Mueller Affd., ¶ 5). More importantly, he did not meet the qualifications for the position, and he admitted that the individual who was selected was more qualified than he was for the position. (DPFOF ¶¶ 27, 29; Green Dep., pp. 160-164, Green Dep., pp. 165-166; Mueller Affd., ¶ 6).

Mr. Green also allegedly observed three pictures or drawings posted at In-Sink-Erator that he believed were derogatory. (DPFOF ¶19; Green Dep., pp. 145-150; Ex. 3 at pp. 74-75). Management employees at In-Sink-Erator were not responsible for the pictures or the drawings. (DPFOF ¶ 20; Foy Affd., ¶ 11). In fact, Mr. Green did not know the identity of the individual or individuals responsible. (DPFOF ¶ 21; Green Dep., pp. 144-150).

Throughout his tenure at In-Sink-Erator, Mr. Green was a member of the United States Army Reserves. (DPFOF ¶ 14; Green Dep., p. 11). Mr. Green continues to be employed by In-Sink-Erator to the present date as an Automated Systems Technician Level "A". (DPFOF ¶ 9; Green Dep., p. 17; Foy Affd., ¶ 6).

II. PROCEDURAL HISTORY

On March 21, 2006, Mr. Green filed an Administrative Complaint with the Wisconsin Equal Rights Division, which was cross-filed with the Equal Employment Opportunity Commission as of the same date. (DPFOF ¶ 3; Radloff Affd., ¶ 2). In that Administrative Complaint, Mr. Green alleged that In-Sink-Erator discriminated against him because of his race (Black), his color (Black), his age, his membership in the military reserves, his disability, and in retaliation for his opposition to discrimination in the workplace. (Id.). In-Sink-Erator denied all the alleged violations.

The Wisconsin Equal Rights Division conducted an investigation of Mr. Green's varied allegations and determined on January 2, 2007, that no probable cause exists to believe that Mr. Green's rights under the Wisconsin Fair Employment Act were violated. (DPFOF ¶ 4; Radloff Affd., ¶ 3). As a result of that determination, the Equal Employment Opportunity Commission issued Mr. Green a Right to Sue letter on February 20, 2007. (DPFOF ¶ 5; Radloff Affd., ¶ 4). Mr. Green then filed the Complaint in the present action on May 21, 2007.

Mr. Green has alleged in the present action that In-Sink-Erator discriminated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 *et seq.* and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Mr. Green alleged the following adverse actions taken against him: (1) that supervisors for In-Sink-Erator drew derogatory pictures of him and posted them at the facility; (2) that Mr. Green did not receive performance reviews in the past; (3) that Mr. Green was issued discipline for insubordination and not following orders; (4) that Mr. Green was denied a Supervisor position of the Automated Systems Technicians; (5) that Mr. Green was denied cross-training of certain equipment in the plant; and (6) that In-Sink-Erator failed to provide a reasonable accommodation of his alleged knee issue. In-Sink-Erator denied all the allegations and asserted various affirmative defenses. In-Sink-Erator now moves the Court for Summary Judgment on all claims asserted by Mr. Green.

(Def's Br. Supp. Mot S.J. at 1 - 4). Based on the reasons set forth herein, the court grants In-Sink-Erator's motion for summary judgment as to each count.

I.  ANALYSIS

   A.  **Summary Judgment Standard**

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255.

   B.  **Americans with Disabilities Act Claim**

The ADA prohibits, inter alia, employers from discriminating against certain employees with disabilities, on the basis of those disabilities. 42 U.S.C. § 12112. The ADA defines "disability" with respect to an individual as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." For an impairment to be considered as substantially limiting one or

more major life activities, it must prevent the individual from performing an activity, or significantly limit the individual's ability to perform an activity, compared to an average person in the general population. 29 C.F.R §1630.2(j). It is the ADA plaintiff's burden to prove that he is a "qualified individual with a disability" – that is, a person "who with or without reasonable accommodation, can perform the essential functions" of his job. 42 U.S.C. § 1211(8) (quoted in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999)).

In his complaint, Green alleges that he falls within the protections of the ADA because he suffers from Osgood Schlatter's disease,[1] which he alleges limits his major life activities of performing manual tasks, walking and working. (Compl. ¶ 21). However, Green presented absolutely no medical evidence supporting his claims of limitations, or even documenting his alleged diagnosis. This lack of medical evidence is dispositive of Green's claim. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 764 (7th Cir. 2001) (holding that a bald declaration of impairment, without anything more, cannot create a genuine issue of material fact as to a plaintiff's being disabled that would preclude summary judgment); *Stone v. Sangamon County Sheriff's Dept.*, 168 F. Supp. 2d 925, 932 (2001) (holding that plaintiff's "failure to provide the Court with competent medical evidence doom[ed] his claims since plaintiffs in ADA cases 'have the burden of establishing with medical evidence the existence of the alleged disability.'" (quoting *Weigert v. Georgetown University*, 120 F. Supp. 2d 1, 7 (D. D.C. 2000)). Thus, the court has no need to expend its limited

---

[1] Green alleges that Osgood Schlatter's causes him knee pain as well as a lack of knee mobility.

resources detailing the numerous other manners in which Green's ADA claim also fails. Accordingly, In-Sink-Erator is entitled to summary judgment on Green's ADA claim.

### C. Title VII Claims

As detailed above, Green alleges the following adverse actions were taken against him out of discriminatory and retaliatory motives: (1) that he was issued discipline for insubordination and not following orders;[2] (2) that he was denied a supervisor position of the Automated Systems Technicians; (3) that he was denied cross-training on certain equipment in the plant; (4) that supervisors for In-Sink-Erator drew derogatory pictures of him and posted them at the facility; and (5) that he did not receive performance reviews in the past. Green is procedurally barred from basing claims on the latter two occurrences, as he did not mention these allegations in his Administrative Complaint. (DPFOF, Attach. 8, Admin. Compl.). *Geldon v. South Milwaukee School Dist.*, 414 F.3d 817, 819 (2005) (A Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations. The rule is meant both to give the EEOC and employer an opportunity to settle the dispute and to give the employer fair notice of the conduct about which the employee is complaining.) (internal citations and quotations

---

[2] Disciplinary reprimands are not mentioned in plaintiff's complaint filed in this case; however, they are mentioned in plaintiff's EEOC Administrative Complaint. As defendant has identified these as a basis for plaintiff's allegation, it appears that plaintiff's vague allegations of discrimination in his complaint put defendant on notice as to a claim based on these write-ups, thus the court will consider them, despite their absence from plaintiff's complaint.

omitted); *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 501 (1994) (holding that an EEOC charge and a discrimination claim in a complaint are not reasonably related just because they both assert various forms of discrimination; rather, a factual relationship must exist between them, which means, at a minimum, that the EEOC charge and the complaint must describe the same conduct.). That leaves the first three claims for the court to examine so as to determine whether they form a sufficient basis for a claim alleging race/color discrimination and/or retaliatory discrimination.

### 1. Racial Discrimination Claims

Title VII, inter alia, prohibits employers from discriminating against employees on the basis of race or color. 42 U.S.C. § 2000e-2(a). An employee who charges an employer with violating this provision has two different methods by which he may seek to prove his claim: the "direct method" or the "indirect method." *See Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-28 (7th Cir.1998).

Under the direct method, a plaintiff offers direct evidence that his employer's adverse action against him stemmed from a discriminatory intent. *Id.* at 727. "Direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). Absent such an admission, a plaintiff may yet prevail under the direct method if he can proffer a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decisionmaker." *Troupe v.*

*May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). In order for the mosaic to be sufficiently convincing, it "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

If a plaintiff cannot proceed pursuant to either of the avenues available under the direct method, then he must utilize the indirect method, which is the *McDonnell Douglas* burden shifting framework. The initial burden is on plaintiff to establish a prima facie case of discrimination. Such a prima facie case is established by proving that plaintiff: 1) was a member of a protected class; 2) was performing his job satisfactorily; 3) experienced an adverse employment action; and 4) similarly situated individuals were treated more favorably. *Rhodes*, 359 F.3d at 504. If he can establish this prima facie case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the action. *Id.* If defendant can do so, the burden shifts back to plaintiff who must then show that the given reason is in fact a mere pretext for discrimination. *Id.*

Whether utilizing the direct or the indirect method, the plaintiff will have to show that he suffered a materially adverse employment action. *Id.* This must be something "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty National Bank and Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir. 1993). Rather it must be "a significant change in the claimant's employment status, such as hiring, discharge, denial of promotion, reassignment to

a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Rhodes*, 359 F.3d at 504.

Thus, initially the court must determine whether Green has alleged a sufficiently material adverse employment action. Again, the three remaining actions he predicates his claims on are: 1) that he was issued discipline for insubordination and not following orders; 2) that he was denied a supervisor position of the Automated Systems Technicians; 3) and that he was denied cross-training on certain equipment in the plant.

The referenced disciplinary write-ups were received by Green on November 1, 2005, and November 4, 2005. (DPFOF, Attach. 5, Green Depo. at 140-141). The November 1st reprimand stemmed from an incident where a Mylar feeding machine Green was responsible for ran out of Mylar and thus caused the line to shut down until the Mylar could be changed out. (Id. at 141-143). Green was written up for "inadequate communication between both leadman, supervisor and others in the department. Specific refusal to talk to supervisor when asked." (Id. at 141). The November 4th reprimand stemmed from a disagreement between Green and his supervisor, Eric Waber, which resulted in Green being written up for "Refusal or failure to follow supervisor's orders." (Id. at 140-141). As to the November 1st reprimand, Green does not offer any evidence, nor does he allege, that this reprimand had any harmful impact on him whatsoever. The court understands that receiving a reprimand is certainly unpleasant, but that in and of itself is clearly not enough to satisfy the definition of "material adverse action" as posited above. As to

the November 4th reprimand, plaintiff alleges that it resulted in him losing education benefits, and losing the right to apply for another position for three years. Yet Green offers no evidence, not even a sworn affidavit, substantiating these claims. In-Sink-Erator, however, did submit evidence in the form of a sworn affidavit that the November 4th reprimand did not cause Green to lose his entitlement to tuition reimbursement benefits from In-Sink-Erator. (Def's Resp. to PPFOF, Attach. 1, Foy Aff. ¶ 12). Regardless though of In-Sink-Erator's evidence, it is up to Green to offer evidence that the write-ups had some "tangible job consequence" accompanying them. *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998). As he has not, the court could not have found that the write-ups were materially adverse employment actions, even if In-Sink-Erator had not submitted evidence showing that the write-ups were not adverse employment actions. Thus, based on Green's lack of evidence of tangible consequence, and In-Sink-Erator's provision of evidence of a lack of tangible consequence, the court must find that neither disciplinary write-up was a materially adverse employment action.

Conversely though, the second predicate act alleged by Green, being denied the Automated Service Technician Supervisor position, does equate to a materially adverse employment action. However, the third instance of discrimination claimed by Green, denial of cross-training on certain equipment, does not rise to the level of a materially adverse employment action.

Green alleges that he requested cross-training on an area of the manufacturing floor called the Terminator. (Compl. ¶ 19). He blames In-Sink-

Erator's denial of his request on discrimination. However, Green has not offered any evidence or argument as to the issue of whether denial of cross-training constitutes a materially adverse employment action. On the other hand, In-Sink-Erator has offered evidence to show that Green would not have received any increase in wage rate or benefits by virtue of receiving cross-training. (DPFOF, Attach. 7, Czekalski Aff. ¶ 9). Similarly, not only did a denial of cross-training not prevent Green from realizing future gains, it also did not alter a term, condition or privilege of his employment. *See Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) ("Those benefits that comprise the 'incidents of employment' . . . or that form 'an aspect of the relationship between the employer and employees,' may not be afforded in a manner contrary to Title VII) (citations omitted). If a benefit is "part and parcel of the employment relations," that benefit, though not required to be provided, nonetheless cannot be provided in a discriminatory manner. *Id.* A benefit is "part and parcel" of an employee's status if it is the type of thing that would induce a prospective employee to apply for the position – such as the opportunity to make partner at a law firm, *Id.* at 76 – or the type of thing that contours the relationship between employer and employee, such as the right to contractual grievance procedures, *E.E.O.C. v. Board of Governors of State Colleges and Universities*, 957 F.2d 424 (7th Cir. 1992). Green does not point to anything that would support the idea that cross-training at In-Sink-Erator could be considered part and parcel of the job. On the other hand, In-Sink-Erator has offered evidence showing that the decision of whether or not to cross-train an employee, and when and where to cross-train employees, is based

-12-
Case 2:07-cv-00461-JPS    Filed 07/15/09    Page 12 of 18    Document 38

on a myriad of factors, and wholly within In-Sink-Erator's discretion. "Even the denial of a monetary perk . . . does not constitute an adverse employment action if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary." *Tyler v. Ispat Inland, Inc.*, 245 F.3d 969, 972 (7th Cir. 2001). Accordingly, In-Sink-Erator's decision not to cross-train Green on the Terminator was not an adverse employment action.

Because neither of the disciplinary write-ups, nor the denial of cross-training, constituted an adverse employment action, Green cannot make a prima face case as to these occurrences. Thus, the only claim that warrants further examination is the claim that he was denied the supervisory position because of racial discrimination.

As previously described, a plaintiff proceeding under the *McDonnell Douglas* burden shifting framework must first make a prima facie case by showing: 1) he was a member of a protected class; 2) he was performing his job satisfactorily; 3) he experienced an adverse employment action; and 4) similarly situated individuals were treated more favorably. Green is a black man, thus he meets the first element. As described above, being denied a supervisory position does meet the third element. As for the second and fourth elements, Green has not offered any pertinent evidence. However, even if the court were to find that Green had met these elements, his claim would still ultimately fail. This is because if Green made his prima facie case, In-Sink-Erator would then have to offer a non-discriminatory reason for its decision denying Green the supervisory position. If In-Sink-Erator can

-13-

do so, then Green must show that the proffered reason is pretext. The non-discriminatory reason offered by In-Sink-Erator for its decision is that Green never filed an internal application for the position. (DPFOF, Attach. 9, Mueller Aff. ¶ 5). According to In-Sink-Erator, this failure precluded Green from consideration for the position. Furthermore, it also appears that Green was not qualified for the position, as he does not have an associate's degree and does not have a "minimum five years technical experience of which two years [was] as a project leader or supervisor." (DPFOF, Attach. 5, Green Depo at 160). Lastly, In-Sink-Erator posits that the person who was hired for the supervisor position was more qualified. (DPFOF, Attach. 9, Mueller Aff. ¶ 6). Each of these rationales for In-Sink-Erator's decision not to promote Green are legitimate non-discriminatory reasons. Thus, for Green's claim to survive summary judgment, he must offer some evidence that these rationales are pretext for discrimination. He offers none. Thus, though the court does not find that Green has made a prima facie case on his claim of racial discrimination arising from the denial of the supervisory position, the court does find that even if Green had made his prima facie showing, his claim nonetheless fails because he cannot show that In-Sink-Erator's proffered rationale is mere pretext.

### 2. Retaliatory Discrimination Claims

Title VII also, inter alia, prohibits employers from discriminating against an employee out of retaliation for the employee's opposition to an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Like racial discrimination claims, an employee who charges an employer with violating the retaliatory provision

-14-

Case 2:07-cv-00461-JPS   Filed 07/15/09   Page 14 of 18   Document 38

do so, then Green must show that the proffered reason is pretext. The non-discriminatory reason offered by In-Sink-Erator for its decision is that Green never filed an internal application for the position. (DPFOF, Attach. 9, Mueller Aff. ¶ 5). According to In-Sink-Erator, this failure precluded Green from consideration for the position. Furthermore, it also appears that Green was not qualified for the position, as he does not have an associate's degree and does not have a "minimum five years technical experience of which two years [was] as a project leader or supervisor." (DPFOF, Attach. 5, Green Depo at 160). Lastly, In-Sink-Erator posits that the person who was hired for the supervisor position was more qualified. (DPFOF, Attach. 9, Mueller Aff. ¶ 6). Each of these rationales for In-Sink-Erator's decision not to promote Green are legitimate non-discriminatory reasons. Thus, for Green's claim to survive summary judgment, he must offer some evidence that these rationales are pretext for discrimination. He offers none. Thus, though the court does not find that Green has made a prima facie case on his claim of racial discrimination arising from the denial of the supervisory position, the court does find that even if Green had made his prima facie showing, his claim nonetheless fails because he cannot show that In-Sink-Erator's proffered rationale is mere pretext.

### 2. Retaliatory Discrimination Claims

Title VII also, inter alia, prohibits employers from discriminating against an employee out of retaliation for the employee's opposition to an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Like racial discrimination claims, an employee who charges an employer with violating the retaliatory provision

of Title VII may proceed on his claim utilizing either the "direct method" or the "indirect method." As described above, Green has no direct evidence, thus he must proceed using the indirect, *McDonnell Douglas*, method.

In the context of a retaliation claim, the *McDonnell Douglas* method "requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). If plaintiff succeeds in doing so, then it is up to the defendant to present "unrebutted evidence of a noninvidious reason for the adverse action." *Id.* If defendant does so, then the court should grant defendant summary judgment. *Id.*

Returning to the previously described adverse employment actions, the court notes that it found that only the denial of the supervisory position amounted to an adverse employment action within the context of Green's racial discrimination claim. The disciplinary write-ups and the denial of cross-training did not meet the strictures of the term. However, in the context of a retaliation claim the term "adverse employment action" has a more expansive meaning than in the context of a substantive discrimination claim. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64-65 (2006). To prevail under the anti-retaliation provision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded

a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006).

It is conceivable that such an expansive definition would encompass each of the allegedly discriminatory occurrences: 1) the disciplinary write-ups; 2) the denial of the supervisory position; and 3) the denial of cross-training on the Terminator. As to the latter two allegations though, the court has no need to determine whether or not defendant has made a prima facie showing, because even if the court assumes plaintiff has, it is still clear that In-Sink-Erator is entitled to summary judgment as it has offered unrebutted evidence of noninvidious reasons for the allegedly adverse actions. Namely, as to the denial of the supervisory position, In-Sink-Erator has proffered unrebutted evidence that the proper person never received an application from Green, that Green was not qualified for the position, and that the person who was hired for the position was more qualified. *Supra* at 13-14. As to the denial of cross-training on the Terminator, In-Sink-Erator has offered unrebutted evidence that Green was not cross-trained on the Terminator when he requested, because there was new equipment in his area on which he needed to improve his competency. (DPFOF, Attach. 7, Czekalski Aff. ¶¶ 4, 7). Given In-Sink-Erator's proffering of evidence supporting these benign explanations for the actions taken, and given the complete dearth of admissible evidence from Green refuting these explanations, the court finds that Green's retaliatory claims based on these occurrences are not entitled to be heard by a jury.

-16-
Case 2:07-cv-00461-JPS   Filed 07/15/09   Page 16 of 18   Document 38

Turning to plaintiff's retaliation claim based on the two disciplinary write-ups, the court finds that Green has not made a prima facie case. Even if the write-ups do meet the lax "adverse action" definition applicable to retaliation claims, and even if Green did engage in a protected activity, he nonetheless fails to make a prima facie showing, for he has not offered a scintilla of evidence to show he "and not any otherwise similarly situated employee who did not complain was . . . subjected to an adverse employment action." *Stone*, 281 F.3d at 642 (quoted in *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003)). "A similarly situated employee is one who is 'directly comparable to [the plaintiff] in all material aspects.'" *Rogers*, 320 F.3d at 755 (quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)). Green proffers no admissible evidence, not a single sworn affidavit, nor any argument, pertaining to the issue of similarly situated employees. As such, Green has doomed his own claim, for it is his burden to demonstrate each element of his prima facie case. Thus, as is the case with Green's other retaliation claims, the court is obliged to enter summary judgment for In-Sink-Erator.

## II. CONCLUSION

Ultimately, Green's allegations suffer from an astounding lack of evidentiary support. The court had little reason to even consider the merits of Green's ADA claim, as Green offered no evidence of his alleged disease or the limitations it imposes on him. Similarly, of those racial discrimination and retaliatory discrimination claims that Green properly administratively exhausted, the overwhelming lack of evidence necessary to establish prima facie cases, as well as

-17-

the lack of evidence necessary to rebut In-Sink-Erator's legitimate explanations, require that the court enter summary judgment on behalf of In-Sink-Erator.

Accordingly,

**IT IS ORDERED** that defendant's Motion for Summary Judgment (Docket #17) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** on its merits, with prejudice, together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of July 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge